here. So we've got a few matters on calendar today and as I always say when I preside, when you appear before the Ninth Circuit, there are no bonus points or extra credit for using all of your time. So if you've made your points and you're not getting any questions back, it's okay to sit down. And with that, Mr. Gunn, good to see you. I will call the first matter United States v. Godwin. Morning, Your Honor. As you just recognized, I'm Carl Gunn. I represent Mr. Godwin. Your Honors, what happened here and in absence of proceeding goes against one of the most fundamental premises of our criminal justice system. I don't know about Your Honors, but it's something I haven't ever seen in more than 40 years of practice in federal appellate and district courts. And that includes 28 years as a federal public defender where I saw lots of cases. So let me ask you about that. I take your point. It's unusual. What would you have had him do here? Just continue to give, I mean obviously in hindsight, you could say, well just give one more extension. Right. But we didn't, you know, he didn't know that at the time. But is that what you would have him do in this situation? Your Honor, what I would have him do is simply vacate. This is a case where a warrant got arrested. So everyone knew several months ahead of time the defendant was out there somewhere and probably not going to come to court. What I think the judge should have done is vacate the sentencing date and then reset it once the defendant was, once Mr. Godwin was arrested. If he wanted to have a date on calendar, he could have. What if they, I mean he'd already been, the arrest warrant had already been out for three months. I mean you have to look at that in context. What if he'd been on the run for another three months? Well it could, so what he could have set a status conference for, left the matter on as a status conference. Obviously if it's, you know, it's probably, he might have wanted the prosecutor to check with the marshals and bring in a report every couple of months. I had a question about that. Is there, this really all happened only in a matter of hours after the close of that hearing. Is there any information in the record about when the government knew where he was? You have two competing premises and that goes to my second issue, Your Honor, of there being error and not at least holding a hearing. The defense attorney filed a motion as soon as he found out Mr. Godwin was in custody, which was the day after. And what he said in his motion was it's unclear whether he was in custody at the time of the sentencing of the very hour. My question is actually even before being in custody, because in order to arrest him someone had to know where he was. And so to me the question is when did they know where he was, which could have preceded the arrest by a day or an hour or a minute? All there is in the record, Your Honor, is what I just counseled indicating, which didn't include any information about that. The prosecutor in response claimed that the police had run across him in a stop around 5 p.m. and arrested him when he ran about about a half hour after he ran. The problem is you have two competing sort of possibilities there and that's why it was at the very least important to hold a hearing under that I'm sorry. I'd like to drill down on that because I'm not aware, I mean the only thing I saw was the 515 statement, which has its own problems because it wasn't from the police officer, there wasn't a police report attached. But what are you relying on to say that he was actually, you said that the defense counsel said that he was in custody before the hearing ended at 256 p.m.? No, no, that it might have been, that it was possible. It's an excerpt of record in the motion, Your Honor. I guess my question is, okay, well go ahead give it that to us first. It's an excerpt of record 32. The defense motion says, quote, it appears quite possible that he may have been unable to attend a sentencing. I guess I'm wondering why that even creates a factual dispute. I mean that's that that really accounts to almost nothing. It's possible, well, I mean there's no basis, there's no factual statement, there's no suggestion. The only facts we have, which are not solid, but is that at 515 they located him. Well, it seems to me that you have to have a hearing to figure out what those facts are rather than just take a double or triple hearsay from the government in an opposition it filed on two hours notice or whatever. There was no sworn evidence of any kind about the timing, is that right? No, all there was, the government's, the motion I just read is two pages, an excerpt of record 3132, and the government's response is the excerpts of record 2930. And I think it basically says what I just described. But, I mean, that of course begs the question of what standard should have been applied at the initial finding. The sort of, obviously, I've got the, we've got the Ornelas case and the Hutchins case. Hutchins held, all you need is a finding of voluntary absence, and after that the district judge is basically free to do whatever he or she wants. Hutchins should not be extended the sentencing context for a couple of reasons. First of all, it is the, it creates a split in the circuits already in the trial context, and there's no reason to aggravate that by creating the same split in the sentencing context. Second, trial is very different than sentencing. You have constitutional and statutory speedy trial rights at trial that you don't have at sentencing. By the way, I'm going to try to save two minutes of rebuttal if I can. You have, you have a bunch of other participants who are inconvenienced, not just the attorneys and judges. You have, the defendant is probably much more important at sentencing than at trial, where most of the time the defendant doesn't even testify, and when he does, he's only one of a number of non-attorney witnesses speaking. So you shouldn't extend the sentencing context, and Ornelas did not do that. I've gone back and read Ornelas very carefully, and you can also go back and read the briefs. Not only did Ornelas not decide the question of whether there should be balancing test after the finding of voluntary absence, but it wasn't argued in the briefs. Ornelas decided two things. It decided what the standard of review should be for what the district court did, which in that case was make a finding of voluntary absence. It said that should be a use of discretion or view, and then it said we're not going to adopt this enhanced standard that the Seventh Circuit did. That's all Ornelas decided. Ornelas did not address whether Hootchin's rejection of the balancing test should be extended to sentencing. So Ornelas, the questions open before this court, and especially in the sentencing context, where in most cases the inconvenience is going to be relatively low, you should at least have a balancing test. Well, the only harm here, maybe in the sentencing context, is people spend time preparing that they didn't have to prepare. But that wasn't true here because the court could have vacated the sentencing date. Then you wouldn't even spend that time preparing. So there's just absolutely no reason, and in hindsight, lots of no reason, given that Mr. Godwin was quickly arrested. And the hindsight becomes a little bit more problematic because he actually moved to reopen, or asked for, what was it, a motion after he was kept. Didn't the Defense Council file a motion to come back in for re-sentencing? Right, right, you did. But I mean, I'm not relying on the hindsight, but just the hindsight illustrates. No, I'm actually saying hindsight becomes a little, yeah, it helps you because there was a motion there. One more question. Just to be clear, this is not a claim that the sentence itself was unconstitutional, but that it may have, there may have been some constitutional infirmities in the process. Is that correct? Yes, I mean, very, very fundamental. Let me follow up on that question because there was an appellate waiver in this case. Correct. And so one of the questions is that, does that appellate waiver cover this? And there's a case before our court right now that's gone unbanked that may answer that question. The Atherton case, I think you're referring to. Right, so I'm not, I'm gonna give you a little more time, so don't worry, keep going. But what do we do in that situation? If Atherton comes out the way the government wants it, does any of this ultimately matter? I think it does because the procedural issue here is, I think, more, is different and more central than the procedural issue in Atherton. As I recall, and I haven't read Atherton carefully because it wasn't cited or brought up in any of the briefings. It's gonna be, it's gone. But as I recall, the issue there was sort of the impropriety in the way evidence was considered or something like this. Here we're dealing with something more fundamental. We're dealing with proceeding without the most important party even there. So I think that's different than what's going to be presented in Atherton. I have one final question for you, and we will give you the two minutes for rebuttal. All right. This issue was not briefed, but this case involved a certain district court judge who has since resigned. And I know there have been some having to redo stuff. I didn't see anything about that in this case. So I'll ask the prosecution the same question. Is this one of the cases that is being looked at to be redone because of who the district court judge was? If you go back to the record in this case, your honor, you'll see that we stayed it for about six months to have that investigated. And there was, district court counsel was appointed for that, and then we decided to go forward with the appeal. So there's nothing pending right now. I certainly don't want to suggest that there might not be something discovered later. But that is it certainly an underlying troubling aspect of the case whenever you have a Judge Kindred case, I guess. Very well. Okay, we'll go ahead and give you two minutes for rebuttal. Thank you. Thank you, counsel. Thank you. May it please the court, Amy Miller on behalf of the United States. This court should enforce Godwin's valid appellate waiver and dismiss this appeal. From the government's perspective, this case should back up and this court should look at specifically the appellate waiver in this case. Mr. Godwin knowingly and voluntarily entered into the plea agreement and as well as had a knowing and voluntary waiver of his appellate rights. Except that, counsel, he waived the right to appeal on all the grounds contained in section 3742, which does not, none of the sections mentioned in the plea agreement either contains constitutional claims or the procedure by which the sentencing occurs. So why should we read those extra things into the plea waiver? This plea, the plea waiver would have encompassed those those two points. This plea waiver specifically phrased that if it was, if the district court sentenced not beyond the statutory max, then the defendant would waive all appellate rights, specifically under 3742, which would have included an illegal sentence, a sentence imposed as a result of an incorrect application of the guideline range, or if the sentence imposed was greater than the sentence in this bill. That's exactly my point. None of those has anything to do with the procedure by which he was sentenced. They are substantive and the right of allocution can result in a different sentence. Just, you know, that is one of the reasons why it exists. So I still don't understand why you think that those references to 3742 waive the right to challenge the fundamental procedure by which the sentencing occurred. And this court has already alluded to in the questions to counsel that that question of the extent of the appellate waiver when it comes to constitutional claims is being considered by this court on bonk, I believe, next month. So, but here this appellate waiver did include illegal sentences and this court in Bibler has decided or has stated that an illegal sentence is one that exceeds the permissible statutory penalty or violates the Constitution. So here, that's again about the substantive sentence. Let me ask you a different question. At the hearing, counsel said that, among other things, that he wasn't sure whether the defendant knew of the recently changed date of the sentencing and the court didn't believe the lawyer. What do we make of that in terms of voluntariness? So in the Hutchins case, this court addressed in the trial context the question of when the defendant may not have had notice of a specific date of the hearing. In that case, the trial was set twice. The defendant knew of those specific dates and then it was continued from there. And the court ultimately said that it's rewarding his own lack of staying in contact with his attorney or knowing of the date and found that there was no issue on that specific point of not knowing the date. Here we back up. The defense counsel admitted to the court the last conduct or contact that he had had with Mr. Godwin was the change of plea. At that hearing, the magistrate judge specifically ordered him to be present at the sentencing date on September 6th at 11 a.m. Mr. Godwin himself clarified the time, asked the court the date and the time. Again, it was said about three times throughout that hearing. And he was not present based on the record, the limited record we have. There's no indication that he was present on September 6th and can acknowledge that that date was moved to the 7th and then to the 12th. But if you back up before that, the arrests weren't issued in June. But the fact that he didn't show up at something that didn't happen doesn't really tell us whether his not showing up to the second continued date was or was not voluntary. I think what bothered me the most about it was the judge simply saying that he didn't believe the lawyer who said I could make indirect contact with him and I'm not sure he knows of this date. But isn't your point that that doesn't really matter because the case law suggests that if he's withholding contact from his lawyer, then whether he knew about it is irrelevant. I mean maybe that doesn't address, maybe that means that the district court decided it, you know, gave the wrong reason because the district court said I didn't believe you. He didn't say it's irrelevant. It doesn't matter. And I apologize your honor, the specific reference of the district court, I will admit I'm not familiar with that specific point in the record. But in the record the court did address that he had not been in contact and yes to your question that that specific point would not necessarily be the deciding factor Although that's not what the judge said. The judge said I don't believe you. Does that matter? I would say no your honor. That here when you look at all of the information that the court had that he, Mr. Godwin, at the plea knew that if there was some that the sentencing date was not going to be continued that he there that he could not ask for a continuance and that if if he had any sort of violation he would be remanded immediately and then we have the incident in June where he is at the airport trying to leave state with a female trying to with over $20,000 hidden in her clothing to that's and he lied about saying that his probation officer had given him permission to go shopping in Seattle and then you have an extensive period with no contact and his attorney represented to the court I have been in contact with people who I believe have been in contact with Mr. Godwin. The court had all of that information and ultimately stated that for the objections that the defense was putting forth to the PSR that Mr. Godwin's presence would not have made a difference to the court ultimately in whether whether or not those objections were sustained that he ultimately was not going to give him the benefit of acceptance of responsibility and he was adding additional points for obstruction of justice based on the violations and the conduct up until that point. Can we decide this case before Atherton? And the reason I ask that is because I think under our current precedent I mean I guess you have an argument that even under our current precedent there's still a waiver but if we can we can't just assume jurisdiction right we can't if we think that there might not be a waiver here and that Atherton may weigh on that can we just assume that there was no waiver or is that like a is that a jurist we dismiss it is it a jurisdiction it's a jurisdictional issue but it's not a subject matter jurisdiction I don't think. So I would say that Atherton could inform this court's decision on this specific appellate issue and and I guess going back to your initial point or question about procedural constitutional challenge versus a challenge to the sentence the Wells case specifically addresses that some of that point which I know that is in question I guess as part of the Atherton decision but that Wells stated that appellate the appellate or waiver exception for constitutional challenges applies to the substance of the sentence and not the the process by which the sentence was imposed and here as counsel agreed on your questions that this is going to the process with which the sentence was imposed and so ultimately if they're the appellate waiver in this context and in this specific case I think the court could consider that even maybe separately from Atherton but it could inform the court's decision. So your point is we could say there was an appellate waiver under our current precedent then we're subject to whatever Atherton you know law perhaps but my more fundamental question is if we think that regardless of whether there was an appellate waiver that the claims don't work here that they're just you know he doesn't have a claim can we assume that the appellate waiver does not apply or should if or is that not a permissible route to us and if we're gonna go down that route we should just wait for Atherton? I would say yeah if you're assuming that the appellate waiver does not apply then it would be beneficial to wait and see what the court does in Atherton but here because this specific appellate waiver is addressing more the defendant's constitutional challenge to the procedure it would make sense that the court could still address it today and I see I'm out of time so we would ask all right thank you counsel thank you I had a copy of Atherton here your honor look back to refresh my memory Atherton is is really dealing on a much more sort of into the process procedural issue if I can put it that way it was relying on false or unreliable information during sentencing this is a fundamental issue whether you can go forward without the defendant even there that's almost analogous to let something like proceeding with the right to counsel versus a Fourth Amendment issue or something I think so however Atherton gets decided and I guess your honors if you wanted to could wait and see how it's written but however Atherton it gets decided I don't think it's going to control on the sort of fundamental due process violation that we have here and assuming Atherton is narrow like you're suggesting or doesn't address this issue then the case you'd be relying on is Ornelius well I'm not relying on Ornelius I'm saying Ornelius doesn't reach this issue and then I'm relying on sort of the all the reasoning and is it brewer that is what's that what's the case that would help you it's really it's really the cases from all the other circuits except this circuit that even in the trial context recognize there should be a balancing even if there's voluntary absence I did want to give a you know this being a different date than the defendant mr. Godwin was told about not only that is you know I'm not saying that mr. Godwin was there on September 6th but we actually don't know that he wasn't all there is in the record is a representation by the prosecutor that she was in the courthouse and he wasn't there but she's not saying I was you know it's not clear whether she was at the courtroom what time she was there etc so at least on this record we don't even know for sure that mr. Godwin wasn't there on September 6th I also wanted to judge Graber noted about mr. Godwin's attorney indicating he'd had some sort of indirect contact to others I think that goes judge Nelson to the question you asked sort of a what reason do we have what reason was there to even hope he might be found I think the fact that there was some indirect contact complied combined with the fact that he's a longtime Alaska resident not a foreign citizen who's justified a hearing that's what yours well and more than that it justified waiting at least a few months to see if he got found or got brought in huh pardon me they did wait three right well I have a few months more and maybe a few months after that depending on what things look like that as your point though let's say we were let's say we were to think on issue one is in my mind is the district court abuses discretion on that day I think you make a pretty good argument no he did not but once it was revealed that the guy was arrested later that day then your point is at the very minimum have a hearing and so we we have not conference in this case yet obviously but if we were to agree with the prosecution on issue one but agree with you on issue two then I guess the process we set our hearing before a new judge to determine whether it was voluntary and if it if it was a voluntary absence that maybe the case is over but if it wasn't a voluntary absence then it would be remanded for resentencing I think that's correct but I'd like to take you back to that first issue I really do think that you know there's in the sentencing contact you know I I have once had a case where defendant absconded in the middle of trial and the judge did not actually proceed in absentee he declared a mistrial but you know that's that's worse the defendant I think she's still gone because I have I have stories I but the point I'm making is is there you know if the judge had gone forward there I mean you know I'd sort of be between a rock and a hard place complaining because you had the jury there you had all the witnesses who had already testified illustrative in that case is one of the witnesses I heard later died I mean in the trial context there's lots of reasons you might go forward in absentee in the sentencing context there really isn't it's really the only reason to go forward in most instances is you just want to get the case off the books should that override the sort of fundamental need to have the person who's getting 20 years in prison be there I'd submit no all right thank you counsel thanks to both of you for your briefing your argument today I want to commend you mr. gun for your many years of service to the defense bar I think I have to see miss son back there as well so thank you both for your many many years you're clearly not doing this for the money and you've been doing this for a long time so we want to thank you this matter is submitted and move on to the
judges: GRABER, OWENS, NELSON